# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TANYA M. BURT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| CHARTER COMMUNICATIONS, INC. ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant. ) | |
| ) | |
| Serve: ) | |
| CSC-Lawyers Incorporating Service Co. ) | |
| 221 Bolivar Street ) | |
| Jefferson City, MO 65101 ) | |

## COMPLAINT

Comes Now Plaintiff Tanya M. Burt and for her cause of action states the following:

## JURISDICTION AND VENUE

1. Plaintiff Tanya M. Burt brings this action under The Family and Medical Leave Act of 1993 (FMLA), 29 U.S. C. §2601 et. seq., the Missouri Human Rights Act (MHRA), R.S. Mo. §213.010 et. seq. (as amended 1986), and the Americans with Disabilities Act, 42 U.S.C. §12101 et. seq. (as amended 2009).

2. Jurisdiction of this court is founded upon 28 U.S.C. §1331 and §1367.

3. Venue is proper under 28 U.S.C. §1391(b) because Plaintiff was employed by the Defendant in the Eastern District of Missouri at all relevant times.

4. Plaintiff has satisfied the administrative prerequisites to suit under the MHRA and the ADA. On or about February 26, 2016, Plaintiff co-filed a timely charge of discrimination with the Missouri Commission on Human Rights (MCHR) and the Equal Employment Opportunity Commission (EEOC). On August 31, 2016, the MCHR issued to Plaintiff a Notice

of Right to Sue, and this lawsuit is filed within ninety days of its issuance.  On September 16, 2016, the EEOC issued to Plaintiff a Notice of Right to Sue and this lawsuit is filed within ninety days of its receipt.

## PARTIES

5.　　Plaintiff Tanya M. Burt is a female resident of the State of Missouri who, until her termination of employment on January 13, 2016, was employed by Defendant Charter Communications in St. Louis County, Missouri.

6.　　Defendant Charter Communications, Inc. is a foreign corporation which, at all relevant times was doing business in the State of Missouri, and employed more than 50 employees for at least 20 workweeks at the facility at which Plaintiff worked.  Further Defendant employed more than 6 employees in the State of Missouri.

## STATEMENT OF FACTS

7.　　Defendant hired Plaintiff on April 30, 2004 as a Human Resources Generalist III for its call center in Birmingham, Alabama.  In 2005, Defendant promoted her to Human Resources Manager, and in 2007 it again promoted her, this time to a Human Resources Director I position.  In 2008, at the Defendant's request Plaintiff relocated to Greenville South Carolina.  Each of these positions was in the company's Customer Care Business Unit.

8.　　In June, 2010, Defendant awarded Plaintiff a position in  its Spectrum Reach Business Unit, headquartered in St. Louis County, where she worked initially as Human Resources Director I for its Central Division.  Defendant promoted Plaintiff in September, 2011 to Human Resources Director II and in 2013 to Senior Director, Human Resources; in both these positions she was responsible for all Human Resources functions for the Spectrum Reach Business Unit.

9. Throughout her employment the Charter Communications managers who supervised Plaintiff, including the President of its Spectrum Reach Business Unit James Heneghan, rated her performance as meeting and exceeding expectations. She was never counseled, warned or disciplined about any conduct or performance issue in the 12 years she worked for Defendant.

10. In February, 2012, Plaintiff's husband was diagnosed with cancer. While he went into remission for a time, metastasized cancer was diagnosed in June, 2013 and he died in June, 2014. Plaintiff and her husband had two small children, who were at the time of his death five and three years of age.

11. Plaintiff worked through her husband's illness until May 2, 2014 when she went on FMLA leave to care for her husband in his last weeks of life.

12. Plaintiff followed company policy in submitting her FMLA leave request and e-mailed her direct supervisor Jim Heneghan that she would be going out on leave. Because Corporate HR Vice President Lisa Rice, to whom she reported on a dotted line basis, was on vacation out of the country and unreachable, Plaintiff e-mailed Ms. Rice's direct supervisor Senior Vice President Human Resources Abby Pfeiffer that she was taking leave and asked a peer named Sharon Fraze to handle questions from her team during her absence.

13. The day before Plaintiff's FMLA leave was to start, Ms. Rice who returned from vacation that day, called Plaintiff. She criticized Plaintiff harshly for failing to give her advance notice of her FMLA leave and talked at great length about how Plaintiff would need to repair their relationship on her return from leave. Plaintiff, who was highly emotional at this time, requested that Ms. Rice defer this criticism to another time.

14. Plaintiff did not hear from Ms. Rice during her leave and on her return to work in mid-July, Ms. Rice's first communication with her was a request that Plaintiff fax copies of her FMLA leave papers to her. No company policy requires an employee to forward copies of FMLA paperwork to a supervisor, and Ms. Rice was not the person authorized by company policy to handle Plaintiff's leave.

15. Following her return from FMLA leave, Plaintiff made an effort to work more closely with Ms. Rice. She included her in e-mail communications about HR issues in the business unit, invited her to events her team members were planning in St. Louis and scheduled bi-weekly telephone calls to keep in touch. Ms. Rice provided no input on the issues Plaintiff referenced in the e-mails, did not accept the invitations to participate in events that Plaintiff's team was planning, and eventually changed the call schedule to once a month. She often cancelled the monthly meetings with Plaintiff, was curt and distant in her communications with Plaintiff, and did not visit with her when she was in St. Louis on business.

16. Ms. Rice's treatment of Plaintiff after she returned from FMLA leave was different from how she interacted with Plaintiff prior to the FMLA leave. Prior to the leave Ms. Rice was generally responsive, engaged and cooperative in her work with Plaintiff.

17. Following her leave, Plaintiff was also left out of a committee working on compensation projects in her business unit and was no longer included in sales team meetings which she had previously attended on a routine basis.

18. When she discussed her career goals with Mr. Heneghan and Senior Vice President Lawrence Eleftheri following her leave, both were complimentary about her performance and contribution, but said little to encourage her to strive for continued advancement.

19. Around the anniversary of her husband's death in the summer of 2015, grief really hit Plaintiff hard and she began to experience emotional difficulties. By the early fall, she felt like she was falling apart and her doctor placed her on FMLA leave on September 25, 2015 for her own serious health condition.

20. Again Plaintiff followed the company's policy in submitting her FMLA leave request. She e-mailed her boss Jim Heneghan and his VP direct reports notifying them that she would be out of the office. She also emailed Ms. Rice telling her that she was having a difficult time personally and would be taking time off.

21. During Plaintiff's FMLA leave of absence, Ms. Rice who was not the person charged by Defendant Charter with handling Plaintiff's FMLA leave of absence, obtained a copy of her leave paperwork from the person who was responsible for handling FMLA leave requests in the Spectrum Reach business unit. Because Plaintiff's FMLA leave paperwork contained information regarding Plaintiff's medical condition, Ms. Rice was not permitted to see the documents and Defendant was prohibited from providing them to her pursuant to 42 U.S.C. §12112 and 29 C.F.R. §1630.14( c ) of the EEOC Regulations implementing the Americans with Disabilities Act.

22. Following Plaintiff's return from this second FMLA leave on November 2, 2015 she received another hostile and more unpleasant call from Ms. Rice. In the conversation, which occurred on November 11, 2015, Ms. Rice criticized her for advising her of her absence by e-mail rather than phone, told her that she should have told her specifically that she was taking an FMLA leave of absence and insisted that Plaintiff should have sent her leave papers to Ms. Rice, even though she is not the person designated by company policy to handle FMLA leave in the Spectrum Reach business unit.

23. Later on November 11th, Plaintiff made a complaint about Ms. Rice's treatment of her in connection with the exercise of her rights under the FMLA to Corporate HR Vice President Colleen Judson and asked Ms. Judson to forward the complaint to the company's newly hired Executive Vice President, Human Resources Paul Marchand. Ms. Judson confirmed by e-mail that the complaint was forwarded to Mr. Marchand.

24. On information and belief, Defendant did not investigate Plaintiff's complaint of FMLA retaliation against Ms. Rice and no corrective action was taken.

25. On January 13, 2016, EVP, HR Paul Marchand come to St. Louis and terminated Plaintiff's employment. He told Plaintiff that the termination was the culmination of an investigation of complaints lodged against her by her staff and a lack of confidence in her "leadership" and "professionalism." He told her that it might be a good thing for her to be leaving Charter, that there might be "something else" she wanted to do.

26. No manager or supervisor at Charter had advised Plaintiff that there were problems with her performance, that she was under investigation, or that there were questions about her "leadership" or "professionalism." Defendant never informed her of any complaints or interviewed her in connection with an investigation.

27. No manager or supervisor at Charter ever warned Plaintiff about performance or conduct problems or gave her any corrective action, despite policies mandating warning, corrective action and performance improvement efforts in the event of problems.

28. In fact, throughout 2015, Mr. Heneghan and the in-coming new president of Spectrum Reach, David Kline, assured Plaintiff that they were happy with her work, and that there would continue to be a role for her in HR following an anticipated 2016 merger of Charter with TimeWarner and Brighthouse.

6

29.     Plaintiff learned a few days after her termination that the so-called investigation of complaints about her had been conducted by Lisa Rice, the individual against whom she had lodged a complaint of FMLA retaliation just eight weeks prior to her discharge.

30.     Prior to her discharge, Plaintiff was the only woman on the Senior Leadership team for the Spectrum Reach business unit.  There were 13 Vice Presidents for Spectrum Reach and all of them are male.

31.     There were, during Plaintiff's employment, at least four men in senior positions in the Spectrum Reach business unit, some of whom were experiencing family and/or health problems, about whose conduct co-workers and subordinates made complaints.  In the case of each of these men, Defendant took no formal corrective action, and none was terminated.

32.     The Spectrum Reach business unit has a history of treating men better than women in connection with promotions and job eliminations.

## COUNT I:  DISCRIMINATION AND RETALIATION UNDER THE FAMILY AND MEDICAL LEAVE ACT

33.     Defendant by its actions and failure to act, including but not limited to the conduct described above, has discriminated against Plaintiff for her exercise of rights under the FMLA and has retaliated against her for complaining about practices unlawful under the FMLA.

34.     Plaintiff has lost income and benefits of employment and has incurred and will continue to incur attorney's fees, costs and expenses of suit.

35.     Defendant's conduct was a willful violation of the FMLA.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor against Defendant for back pay, liquidated damages, front pay, and prejudgment interest, as well as for appropriate equitable, declaratory and injunctive relief, attorneys' fees and costs and for such other relief as may be just and proper under the circumstances.

### COUNT II:  DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

36. Defendant, by its actions and failure to act, including but not limited to the conduct described above, has discriminated against Plaintiff because its managers regarded her as disabled, in violation of the ADA.  Defendant has, further, violated the ADA by failing to maintain the confidentiality of information regarding her medical condition, and by providing it to her supervisor without good cause.

37. Plaintiff has lost income and benefits of employment and has incurred and will continue to incur attorney's fees, costs and expenses of suit.

38. As a result of Defendant's actions and failures to act described herein, Plaintiff has suffered garden variety emotional pain, humiliation, inconvenience, mental anguish and loss of enjoyment of life.

39. Defendant's conduct was undertaken with malice or with reckless disregard for Plaintiff's federally protected rights.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor against Defendants for compensatory and punitive damages, prejudgment interest, as well as for appropriate equitable, declaratory and injunctive relief, attorneys' fees and costs and for such other relief as may be just and proper under the circumstances.

### COUNT III:  DISCRIMINATION IN VIOLATION OF THE MISSOURI HUMAN RIGHTS ACT

40. Defendant, by its actions and failure to act, including but not limited to the conduct described above, has discriminated against Plaintiff on account of her sex, in part because of its managers sex-based stereotyped views about her responsibilities as a caregiver for her children, and because its managers regarded her as disabled, in violation of the MHRA.

41. Plaintiff has lost income and benefits of employment and has incurred and will continue to incur attorney's fees, costs and expenses of suit.

42. As a result of Defendant's actions and failures to act described herein, Plaintiff has suffered garden variety emotional pain, humiliation, inconvenience, mental anguish and loss of enjoyment of life.

43. Defendant's conduct was outrageous because of its evil motive or reckless indifference to the rights of Plaintiff and as such, warrants an award of punitive damages in such sum as will serve to punish Defendant and to deter it and others from like conduct.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor against Defendants for compensatory and punitive damages, prejudgment interest, as well as for appropriate equitable, declaratory and injunctive relief, attorneys' fees and costs and for such other relief as may be just and proper under the circumstances.

SEDEY HARPER WESTHOFF, P.C.

Attorneys for Plaintiff

*/s/ Mary Anne Sedey*

_____
Mary Anne Sedey, #26731MO
Benjamin F. Westhoff, #53047MO
2711 Clifton Ave.
St. Louis, MO 63139
314/773-3566
314/773-3615 (fax)
msedey@sedeyharper.com
bwesthoff@sedeyharper.com